IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BLACKSTONE INTERNATIONAL, LTD., *

    Plaintiff, *

v.                                                           Civil Action No. GLR-19-243

ZHEJIANG MIKIA LIGHTING CO., LTD., et al., *

    Defendants. *

***

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant E2 Limited's ("E2") Rule 12(b) Motion to Dismiss First Amended Complaint for Insufficient Service of Process, Lack of Personal Jurisdiction, and Failure to State a Claim. (ECF No. 31).[1] The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will grant the Motion.

---

[1] Also pending before the Court is E2's Rule 12(b) Motion to Dismiss Complaint for Insufficient Service of Process, Lack of Personal Jurisdiction, and Failure to State a Claim (ECF No. 23) and Plaintiff Blackstone International, Ltd.'s ("Blackstone") Consent Motion for Extension (ECF No. 25). When a plaintiff files an amended complaint, it generally moots any pending motions to dismiss because the original complaint is superseded. Venable v. Pritzker, No. GLR-13-1867, 2014 WL 2452705, at *5 (D.Md. May 30, 2014) aff'd, 610 F.App'x 341 (4th Cir. 2015). Accordingly, the Motion to Dismiss will be denied as moot and Blackstone's Motion for Extension will be granted nunc pro tunc.

# I. BACKGROUND[2]

Plaintiff Blackstone International, Ltd. ("Blackstone"), a Maryland corporation, alleges that Defendants Zhejiang Mikia Lighting Co., Ltd. ("Mikia"), a Chinese company, and E2, a Hong Kong company, engaged in a systematic, international scheme to interfere with Blackstone's contractual relationship with Costco Wholesale Corporation ("Costco") and to undercut Blackstone's profits on the Blackstone Tower Fan (the "Product"). (Am. Compl. ¶¶ 1, 3, 33–34, 36–38, ECF No. 26).

In early 2016, Blackstone contracted with Mikia to manufacture the Product for sale to Costco in the United States, but the parties' business relationship began to deteriorate soon thereafter, as Mikia manufactured defective Products and failed to meet production and delivery deadlines. (Id. ¶¶ 58–63, 73). Despite recurring performance-related deficiencies, Blackstone continued to work with Mikia because Mikia assured Blackstone that the quality and production issues would be remedied. (Id. ¶¶ 65, 76). Additionally, Mikia agreed to allow Blackstone to offset payments when Mikia missed a delivery deadline or produced defective Products. (Id. ¶¶ 65–72).

Without Blackstone's knowledge or consent, Mikia applied for a Chinese design patent for the Product in April 2018, which Mikia later received. (Id. ¶¶ 80, 86). Mikia then notified Blackstone in November 2018 that it was terminating the partnership. (Id. ¶ 81). At some point, Mikia contacted Costco in an effort to sell the Product to Costco, either

---

[2] Unless otherwise noted, the Court takes the following facts from Blackstone's Amended Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

directly or through another vendor. (Id. ¶ 82). During those communications, Mikia falsely informed Costco that Blackstone breached its contract with Mikia, and that Blackstone failed to pay Mikia for manufacturing the Product. (Id.). Costco subsequently breached its contract with Blackstone by ceasing to purchase the Product from Blackstone. (Id. ¶ 91). E2, which was "fraudulently organized" under the control of Mikia for the purpose of acting as importer of record and vendor to Costco, now works with Mikia to export the Product into the United States for sale. (Id. ¶¶ 31, 33).

On January 25, 2019, Blackstone filed a Complaint against Mikia and E2. (ECF No. 1). On March 15, 2019, E2 filed a Motion to Dismiss. (ECF No. 23). Blackstone filed an Amended Complaint on April 5, 2019, supplementing its factual allegations. (ECF No. 26). The ten-count Amended Complaint alleges against Mikia and E2, unless otherwise noted: breach of contract against Mikia (Count I); fraud/intentional misrepresentation against Mikia (Count II); tortious interference with Blackstone's contracts (Count III); tortious interference with Blackstone's business relationships with Costco and other third parties (Count IV); conversion of intellectual property (Count V); unfair or deceptive trade practices (Count VI); common law trademark infringement (Count VII); common law trade dress infringement (Count VIII); false designation of origin and dilution (Count IX); and copyright infringement (Count X). (Am. Compl. ¶¶ 94–154). Blackstone seeks monetary damages and injunctive relief enjoining Mikia and E2 from importing, selling, advertising, or misappropriating Blackstone's intellectual property. (Id. at 54–55).

E2 filed a Motion to Dismiss the Amended Complaint on May 10, 2019. (ECF No. 31). Blackstone filed an Opposition on June 7, 2019. (ECF No. 34). That same day,

Blackstone also filed a sealed declaration, supplementing its jurisdictional claims against E2. (ECF No. 35). On June 28, 2019, E2 filed a Reply and objections to the sealed declaration. (ECF Nos. 37, 37-4).

## II. DISCUSSION

### A. <u>**Failure to Serve**</u>

Before addressing the substance of E2's Motion, the Court notes that Blackstone has failed to serve Mikia. Service of process on a foreign defendant is governed by Federal Rule of Civil Procedure 4(f)(1), which provides that an individual may be served in a place not within any judicial district of the United States "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed.R.Civ.P. 4(f)(1). Rule 4(m), which imposes a 120–day limit on service of process, does not apply to service effectuated outside of the United States. <u>See</u> Fed.R.Civ.P. 4(m).

Although the Court of Appeals for the Fourth Circuit has not imposed a time limit on foreign service of process, several courts have held that a plaintiff must act diligently and effectuate international service within a reasonable period of time. <u>See</u> <u>USHA (India) Ltd. v. Honeywell Int'l Inc.</u>, 421 F.3d 129, 134 (2d Cir. 2005) (concluding that "Rule 4(m)'s exemption does not apply if, as here, the plaintiff did not attempt to serve the defendant in the foreign county"); <u>see also</u> <u>Nylik Corp. v. Fastener World Inc.</u>, 396 F.3d 805, 807 (7th Cir. 2005) (stating that "the amount of time allowed for foreign service is not unlimited" and suggesting that dismissal may be appropriate "[i]f, for example, a plaintiff

4

made no attempt to begin the process of foreign service within 120 days") (internal quotation marks and citations omitted).

Here, Blackstone filed its original Complaint on January 25, 2019, naming both Mikia and E2 as Defendants. The same day, the Clerk of the Court issued Blackstone summonses for both Defendants. (ECF No. 5). On February 14, 2019, Blackstone filed an Affidavit of Service, asserting that it personally served E2 on January 31, 2019. (ECF No. 15). On April 9, 2019, the Clerk reissued a summons for Mikia. (ECF No. 28). However, Blackstone never filed an Affidavit of Service as to Mikia, and there are no docket entries regarding any attempts by Blackstone to serve Mikia.

More than a year has elapsed since Blackstone filed its original Complaint. This case has steadily progressed and is now before the Court on a dispositive motion. At this juncture, the Court concludes that Blackstone has failed to act diligently to effectuate service upon Mikia within a reasonable period of time. Thus, the Court will dismiss this action without prejudice as to Mikia. The Court now evaluates the merits of E2's Motion.

**B.**     **Motion to Dismiss**

E2 contends that Blackstone's Amended Complaint should be dismissed under Rule 12(b)(2) because the Court lacks personal jurisdiction over E2.[3] The Court agrees.

---

[3] E2 also argues that the Amended Complaint should be dismissed because E2 was not properly served and Blackstone fails to state a claim upon which relief can be granted. Because the Court will dismiss the Amended Complaint under 12(b)(2), the Court need not address the balance of E2's arguments.

When a court's power to exercise personal jurisdiction over a nonresident defendant is challenged by a motion under Fed.R.Civ.P. 12(b)(2), "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003) (citing Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 59–60 (4th Cir. 1993)). If the existence of jurisdiction turns on disputed facts, the court may resolve the challenge after a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question. Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). If the court chooses to rule without conducting an evidentiary hearing, relying solely on the basis of the complaint, affidavits, and discovery materials, "the plaintiff need only make a prima facie showing of personal jurisdiction." Carefirst, 334 F.3d at 396; see also Mylan, 2 F.3d at 60; Combs, 886 F.2d at 676. In determining whether the plaintiff has proven a prima facie case of personal jurisdiction, the court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." Mylan, 2 F.3d at 60; Carefirst, 334 F.3d at 396.

Absent a federal statute specifying different grounds for personal jurisdiction, federal courts may exercise jurisdiction in the manner provided by state law. Fed.R.Civ.P. 4(k)(1)(A). "[F]or a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." Carefirst, 334

F.3d at 396. Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103 (2018), authorizes the exercise of personal jurisdiction to the limits permitted by the Due Process Clause of the Fourteenth Amendment.[4] See ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 710 (4th Cir. 2002); Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory", 283 F.3d 208, 212–13 (4th Cir. 2002). That broad reach does not suggest that analysis under the long-arm statute is irrelevant. Rather, it merely reflects that, "to the extent that a defendant's activities are covered by the statutory language, the reach of the statute extends to the outermost boundaries of the due process clause." Dring v. Sullivan, 423 F.Supp.2d 540, 545 (D.Md. 2006) (quoting Joseph M. Coleman & Assocs., Ltd. v. Colonial Metals, 887 F.Supp. 116, 118–19 n.2 (D.Md. 1995)). A court's exercise of jurisdiction over a nonresident defendant comports with due process

---

[4] The Maryland long-arm statute, Md. Cts. & Jud. Proc. Code Ann. § 6–103(b), authorizes a court to exercise personal jurisdiction over a person, who directly or through an agent:

> (1) Transacts any business or performs any character of work or service in the State;
> (2) Contracts to supply goods, food, services, or manufactured products in the State;
> (3) Causes tortious injury in the State by an act or omission in the State;
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;
> (5) Has an interest in, uses, or possesses real property in the State; or
> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

if the defendant has "minimum contacts" with the forum, such that to require the defendant to defend its interests in that state "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

Personal jurisdiction may be specific or general. Under Armour, Inc. v. Battle Fashions, Inc., 294 F.Supp.3d 428, 433 (D.Md. 2018). Here, Blackstone only argues that E2 is subject to specific personal jurisdiction. A court may exercise specific jurisdiction over a defendant if the defendant's contacts with the forum state form the basis for the suit. In determining whether specific jurisdiction exists, a court must consider (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiff's claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally "reasonable." Carefirst, 334 F.3d at 396; see also ALS Scan, 293 F.3d at 711–12; Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984). If, and only if, the plaintiff has satisfied the first prong, will the Court consider the second and third prongs. Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009).

In assessing the extent to which a corporation purposefully avails itself of the benefits of conducting business in a forum, the Court considers the following non-exhaustive list of factors: first, whether the defendant maintains offices or a registered agent in the forum state; second, whether the defendant owns any property there; third, the extent to which the defendant solicits or initiates business in the forum state; fourth, whether the defendant "deliberately engaged in significant or long-term business activities"

in the state; and fifth, whether the defendant made in-person contact with residents regarding a business relationship.[5] Id.

Here, E2 asserts that it does not maintain offices or have employees in Maryland or anywhere else in the United States; however, the affidavit filed in support of E2's Motion is silent as to whether E2 has a registered agent in Maryland or owns property in the forum. E2 also avers that it does not export or import products directly into the United States; rather, E2 delivers the Product to Costco in Ningbo, China, where Costco takes ownership of the Product and exports it worldwide. As such, E2 contends that it does not solicit or initiate business in Maryland or deliberately engage in business activities within the state. E2 also contends that its employees have never travelled to Maryland or the United States for any business purpose. Finally, contrary to Blackstone's assertions, E2 asserts that it is not owned, controlled, or managed by Mikia and that the companies maintain separate offices and headquarters.

In response, Blackstone alleges that E2 deliberately shipped the infringing Products to Maryland. To supplement this allegation, Blackstone's CEO, John Black, submitted a sealed declaration, proffering facts regarding: (1) E2's corporate identity; (2) the process by which, and paperwork documenting how, E2 allegedly ships the Product to Maryland; (3) E2's contact with Maryland customers; and (4) Mikia's access to defective Blackstone

---

[5] Additional factors include "the nature, quality, and extent of the parties' communication about the business being transacted," whether the parties contractually agreed that any disputes would be governed by the law of the forum state, and "whether the performance of contractual duties was to occur within the forum." Consulting Eng'rs Corp., 561 F.3d at 278. Because Blackstone and E2 do not have a contractual relationship, these factors are irrelevant to the Court's analysis.

9

Products that E2 allegedly sold in Maryland. (See Black Decl. ¶¶ 4–11, ECF No. 35). E2 objected to Black's declaration on various grounds, including hearsay, lack of personal knowledge, and lack of authentication. Accordingly, the Court must examine the admissibility of the allegations in Black's declaration to determine if Blackstone has alleged sufficient facts establishing personal jurisdiction.

At the outset, the Court notes that the Federal Rules of Civil Procedure do not contain prerequisites for documents, such as declarations, attached to responses to motions to dismiss. Nonetheless, this Court's review of Black's declaration is guided by Rule 56(c), which courts have used in judging affidavits relating to Rule 12(b) motions. See, e.g., McLaughlin v. Copeland, 435 F.Supp. 513, 520–21 (D.Md. 1977) (striking paragraphs of an affidavit, offered in opposition to a motion to dismiss for lack of personal jurisdiction, that were based on hearsay and for which the affiant had no personal knowledge).

Under Rule 56(c) "parties must support their motions with evidence that "[could] be presented in a form that would be admissible." Fed.R.Civ.P. 56 (c)(2). "Depositions and affidavits must be based on personal knowledge, and all documents and other physical evidence must be properly authenticated and either non-hearsay or within a recognized exception." Mt. Hawley Ins. Co. v. Adell Plastics, Inc., 348 F.Supp.3d 458, 464 (D.Md. 2018) (internal quotations and citations omitted). Applying these fundamental concepts to Black's declaration, which was submitted together with Blackstone's Opposition, the Court concludes that it largely consists of hearsay assertions for which Black has no personal knowledge.

To begin, Black asserts that "Costco identified E2 Limited to [him] as Mikia, stating that E2 and Mikia were the same." (Black Decl. ¶ 4). Black does not attribute this statement to any named individual, nor does he state how "Costco" learned that information. Moreover, it is unclear whether Black or the company conducted an investigation to confirm the truthfulness of that information. But for this hearsay statement, Black has no independent knowledge of the business relationship between Mikia and E2. Thus, the Court will not consider this allegation.

Black also alleges that Blackstone began receiving warranty claims in early 2019 for defective Products that Blackstone never sold and, after investigating, Blackstone learned that these defective Products had been produced by Mikia and rejected by Blackstone for failure to meet its quality standards. (Id. ¶ 10). Black contends that warranty claims included Maryland customers who purchased the Products from Costco in 2019. (Id. ¶ 11). These statements appears to be based on Black's role as Blackstone's CEO and his personal knowledge of the company's internal investigation. Thus, the statements are admissible.

Additionally, Black asserts that Maryland customers can call or email E2 to obtain customer service support for the Product. (Black Decl. ¶ 9). Although Black does not state the basis for this statement, Black's assertion concerns publicly available information that anyone, including Black, can easily learn. At this stage, the Court is persuaded that Black has sufficient personal knowledge of this statement. See, e.g., McLaughlin, 435 F.Supp. at 519 (declining to strike portions of an affidavit that "did not contain the traditional litany of [the affiant's] personal knowledge" where "it [was] apparent from the face of the

affidavit that the affiant ha[d] personal knowledge"). Thus, the Court will consider the fact that E2 offers customer service support to Maryland customers when assessing the extent to which E2 availed itself of the privilege of conducting business in this forum.

Black's declaration summarizes the process by which E2 documents and ships the Products to Maryland, which he supports with a sealed exhibit allegedly identifying E2's shipments to the state. (Black Decl. ¶¶ 5–7; see Black Decl. Ex. A). E2 contends these statements are inadmissible for lack of personal knowledge and that the sealed exhibit contains hearsay and has not been properly authenticated. In essence, E2 seeks the exclusion of both the exhibit and Black's summary of its contents. The Court finds Finance Co. of America v. BankAmerica Corp., 493 F.Supp. 895 (D.Md. 1980), instructive on the authentication issue, as that case presented facts nearly identical to those here.

In Finance Co., defendants filed a motion to dismiss for lack of personal jurisdiction. 493 F.Supp. at 898. The plaintiff attached various documents to its opposition, and defendants objected, asserting that the documents had not been properly authenticated. Id. at 900. In overruling defendants' objection, this Court concluded that "defendants have not challenged the authenticity of the documents. Rather, they have attacked plaintiff's failure to comply with the methods of authentication set out in Federal Rules of Evidence 901." Id. The Court further explained that "[t]he general rule is that (t)he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Id. at 900–01 (internal quotation marks omitted) (alteration in original). "When

applied in this context," the Court concluded that the rule "is satisfied by defendants' failure to challenge the documents' authenticity." Id. at 901.

Here, E2 objects to this Court's consideration of the chart Black submitted with his declaration, citing Federal Rules of Evidence 902, which governs self-authenticating documents. Although E2 cites a different rule, the conclusion is the same: E2 failed to challenge the authenticity of the chart and only objected to Blackstone's failure to properly authenticate it. E2's objection under Rule 902 is thus insufficient to preclude this Court's review of the chart. However, the inquiry into admissibility does not end here. The next issue is whether the chart is, nonetheless, inadmissible because it contains hearsay.

As previously noted, the chart purports to show various shipments that E2 made to the United States. Black asserts that such a chart would have been prepared and maintained during the regular course of E2's business dealings with Costco. In so alleging, Black invokes the business records exception to the hearsay rule. See Fed.R.Evid. 803(6).[6] But

---

[6] Under Fed.R.Evid. 803(b), the rule against hearsay does not preclude the introduction of:

> A record of an act, event, condition, opinion, or diagnosis if:
> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

13

in order to receive the benefit of Rule 803(b), the records must, in turn, comport with the requirements of Federal Rule of Evidence 902(11) or 902(12), the latter of which is relevant to this analysis. Rule 902(12) requires that a foreign record offered in a civil case be "signed in a manner that, if falsely made, would subject the maker to a criminal penalty in the country where the certification is signed." Fed.R.Evid. 902(12). The chart here contains no such certification and, as a result, will not be considered by this Court when assessing the extent to which E2 availed itself of the privilege of conducting business in this forum. Relatedly, the Court will not consider Black's averments referencing or analyzing the chart.[7]

Taking the allegations in the Amended Complaint as true, in conjunction with the admissible portions of Black's declaration, Blackstone has established the following as to E2: (1) E2 is a foreign private limited company organized in Hong Kong; (2) Mikia and E2 contacted Costco, without notifying Blackstone, and sought to sell the Blackstone Tower Fans directly to Costco; (3) E2 is presently exporting the Blackstone Tower Fan, into the United States for sale to customers; and (4) consumers, including those in Maryland, may call or email E2's customer service representatives for Product support. These allegations are coupled with E2's uncontroverted assertions that it does not maintain

---

[7] Although the Court will not consider the chart, the Court concludes that Black possesses personal knowledge of the shipping requirements Costco imposes on its vendors. Blackstone was a vendor for Costco for several years and presumably subject to the same shipping requirements and processes that would govern E2's vendor relationship with Costco, assuming one exists. As the CEO of Blackstone, Black presumably gained familiarity with these requirements, such that his knowledge is not derived solely, or in part, from information found in the chart.

offices or have employees in Maryland and that its employees have never travelled to Maryland for any business purpose. Taken together, these allegations fail to establish this Court's authority to exercise personal jurisdiction over E2.

In reaching this conclusion, the Court distinguishes the present case from the facts in Kernius v. International Electronics., Inc., 433 F.Supp.2d 621 (D.Md. 2006), which Blackstone cites. There, a Washington State manufacturer who did not maintain any agents, accounts, employees, or offices in Maryland and who did not target marketing or advertisements to Maryland, sought the dismissal of a patent infringement case that concerned an internet call-waiting device. Kernius, 433 F.Supp.2d at 623. The plaintiff in that case purchased the device in a Wal-Mart store in Maryland before suing IEI, the manufacturer. Id. at 624. "The critical question raised by the parties [was] whether selling [the] devices to national retailers such as Wal–Mart, Target, RadioShack, and Best Buy [was] sufficient to establish constitutionally sufficient minimal contacts between IEI and the State of Maryland." Id. The Kernius court answered that question in the affirmative, concluding that "[i]t is reasonable to infer from the undisputed fact that [the] devices are sold by national retailers such as RadioShack, Best Buy, Target, and Wal–Mart that [the] devices are placed in the stream of commerce through established distribution channels and subsequently sold or used in the State of Maryland." Id. at 626.

Although Blackstone implores this Court to reach the same conclusion, the Court declines to do so based on its subsequent decision in Windsor v. Spinner Industry Co., 825 F.Supp.2d 632 (D.Md. 2011), as amended (Dec. 15, 2011). In Windsor, the Court reiterated that "the Fourth Circuit specifically rejected the notion that a state could assert jurisdiction

over a defendant whose product is sold in the state simply because [it] must expect that to happen." 825 F.Supp.2d at 638 (internal quotation marks and citations omitted). The Windsor Court then recognized, but disagreed with, the holding in Kernius, because its line of reasoning was "indistinguishable from the statement in World-Wide Volkswagen that jurisdiction lies in a forum when a defendant places its product in the stream of commerce 'with the expectation' that it will be sold there." Id. at 639–40 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 298 (1980)). In doing so, the Court again reiterated that the Fourth Circuit has "unambiguously held that some forum-specific conduct" is required in addition to the expectation that a product will reach a specific forum in order to create minimum contacts. Id. at 640.

Here, Blackstone has failed to allege facts demonstrating that E2 did anything more than selling and shipping the Product to Costco with the knowledge that the Product would be sold by Costco to customers in the United States, including Maryland. These allegations are insufficient to establish personal jurisdiction over E2. See, e.g., Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty., 137 S.Ct. 1773, 1783 (2017) (concluding that the "bare fact" that the defendant "contracted with a California distributor is not enough to establish personal jurisdiction in the State"); Lesnick v. Hollingsworth & Vose Co., 35 F.3d 939, 945 (4th Cir. 1994) (finding that "[t]he touchstone of the minimum contacts analysis remains that an out-of-state person have engaged in some activity purposefully directed toward the forum state"); Gogel v. Maroulis, No. CV GLR-16-2695, 2019 WL 5593280, at *4 (D.Md. Oct. 30, 2019) (noting that "[a]s the Supreme Court has unequivocally stated, the introduction of goods into a state, through a third-party distributor

without more, is insufficient to extend the jurisdictional reach of the court to an out-of-state manufacturer"); Williams v. S.A., No. CV TDC-14-3124, 2016 WL 5719717, at *3 (D.Md. Sept. 30, 2016) (explaining that "minimum contact" exists when an out-of-state defendant engages in regular sales in Maryland or engages in other conduct, such as "special state-related design, advertising, advice, marketing or anything else that would indicate a specific effort by the defendant to sell in [Maryland]") (internal quotation marks and citations omitted) (alteration in original).

The fact that Maryland customers may contact E2's customer service representatives does not alter the Court's conclusion. There is no evidence in the record that E2's customer service representatives work from offices in Maryland, travel to Maryland to repair or replace Products, or service only the needs of Maryland residents. Moreover, Blackstone has not alleged that E2's representatives contact Maryland consumers, advertise in Maryland, or otherwise attempt to solicit business in this forum. Based on these facts, E2's representatives are no more than passive recipients of incoming calls and emails, not just from Maryland customers, but from customers in any state where the Product is sold. To be clear, E2's acceptance of customer communications does not constitute activity purposefully directed at the State of Maryland.

Because Blackstone has failed to establish purposeful availment under Carefirst's first prong, Blackstone has not met its burden of demonstrating that the Court has personal jurisdiction over E2. As such, the case must be dismissed.

### III. CONCLUSION

For the reasons stated above, the Court will dismiss Mikia as a party in this case; grant E2's Rule 12(b) Motion to Dismiss First Amended Complaint for Insufficient Service of Process, Lack of Personal Jurisdiction, and Failure to State a Claim (ECF No. 31); deny as moot E2's Rule 12(b) Motion to Dismiss Complaint for Insufficient Service of Process, Lack of Personal Jurisdiction, and Failure to State a Claim (ECF No. 23); and grant Blackstone's Consent Motion for Extension (ECF No. 25) nunc pro tunc. A separate Order follows.

Entered this 30th day of March, 2020.

/s/
George L. Russell, III
United States District Judge