IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BLACKSTONE INTERNATIONAL, LTD., | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-19-243 |
| | * | |
| ZHEJIANG MIKIA LIGHTING CO., LTD., et al., | * | |
| | * | |
| Defendants. | * | |
| | *** | |

## MEMORANDUM OPINION

THIS MATTER is before the Court on Plaintiff Blackstone International, Ltd.'s ("Blackstone") Motion to Amend or Alter the Judgment Pursuant to Federal Rule of Civil Procedure 59(e) (ECF No. 42).[1] The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will grant the Motion.

### I. BACKGROUND

The relevant facts underlying this case are set forth in detail in the Court's March 30, 2020 Memorandum Opinion and Order granting Defendant E2 Limited's ("E2") Motion to Dismiss. (ECF Nos. 40, 41). In brief, Blackstone, a Maryland corporation,

---

[1] Also pending before the Court is Blackstone's Motion to Partially Withdraw Motion to Amend or Alter the Judgment Pursuant to Federal Rule of Civil Procedure 59(e) (ECF No. 51). In it, Blackstone seeks to withdraw its Motion to the extent the Motion seeks to alter the Court's decision to dismiss Defendant E2 Limited ("E2") from this action. The Court will grant Blackstone's Motion to Partially Withdraw and will not reconsider its decision to dismiss E2 from this action.

alleges that Defendants Zhejiang Mikia Lighting Co., Ltd. ("Mikia"), a Chinese company, and E2, a Hong Kong company, engaged in a systematic, international scheme to interfere with Blackstone's contractual relationship with Costco Wholesale Corporation ("Costco") and to undercut Blackstone's profits on its Blackstone Tower Fan product (the "Product"). (Am. Compl. ¶¶ 1, 3, 33–34, 36–38, ECF No. 26).

On January 25, 2019, Blackstone filed a Complaint against Mikia and E2. (ECF No. 1). On March 15, 2019, E2 filed a Motion to Dismiss. (ECF No. 23). Blackstone filed an Amended Complaint on April 5, 2019, supplementing its factual allegations. (ECF No. 26). The ten-count Amended Complaint alleges against Mikia and E2, unless otherwise noted: breach of contract against Mikia (Count I); fraud/intentional misrepresentation against Mikia (Count II); tortious interference with Blackstone's contracts (Count III); tortious interference with Blackstone's business relationships with Costco and other third parties (Count IV); conversion of intellectual property (Count V); unfair or deceptive trade practices (Count VI); common law trademark infringement (Count VII); common law trade dress infringement (Count VIII); false designation of origin and dilution (Count IX); and copyright infringement (Count X). (Am. Compl. ¶¶ 94–154). Blackstone seeks monetary damages and injunctive relief enjoining Mikia and E2 from importing, selling, advertising, or misappropriating Blackstone's intellectual property. (Id. at 54–55).

E2 filed a Motion to Dismiss the Amended Complaint on May 10, 2019. (ECF No. 31). Blackstone filed an Opposition on June 7, 2019. (ECF No. 34). That same day, Blackstone also filed a sealed declaration, supplementing its jurisdictional claims against

E2. (ECF No. 35). On June 28, 2019, E2 filed a Reply and objections to the sealed declaration. (ECF Nos. 37, 37-4).

The Court granted E2's Motion to Dismiss on March 30, 2020. (ECF No. 40, 41). In its Order, in addition to dismissing Blackstone's action against E2 for lack of personal jurisdiction, the Court sua sponte dismissed Mikia from the action pursuant to Federal Rule of Civil Procedure 4(m) for Blackstone's failure to timely serve Mikia. (See Mem. Op. at 4–5, ECF No. 40). On April 24, 2020, Blackstone filed a Motion to Amend or Alter the Judgment Pursuant to Federal Rule of Civil Procedure 59(e) ("Motion to Reconsider"). (ECF No. 42). E2 filed an Opposition on May 8, 2020. (ECF No. 43).[2] Blackstone filed a Reply on June 5, 2020. (ECF Nos. 48, 49). Finally, Blackstone filed a Motion to Partially Withdraw Motion to Amend or Alter the Judgment Pursuant to Federal Rule of Civil

---

[2] E2's Opposition is improper to the extent it argues to sustain the Court's dismissal of Mikia from this action. "Numerous courts have held that '[c]o-defendants do not have standing to assert improper service claims on behalf of other defendants,' regardless of the alignment of their interests." United States v. Park, 389 F.Supp.3d 561, 582 (N.D.Ill. 2019) (quoting Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria, 265 F.R.D. 106 (S.D.N.Y. 2010) (listing cases)). In an exhibit accompanying its Motion to Dismiss, E2's Chief Financial Officer, Paak Wong, averred, "E2 is owned by Miss Alice Mar. No owners or members of [Mikia] own, control, or manage E2." (Wong Decl. ¶ 4, ECF No. 31-2). E2 emphasized this point in its Motion to Dismiss, stating, "[E2] is unrelated to China-based Mikia, by virtue of the fact that the two businesses are separate legal entities, have separate offices and headquarters, have separate and distinct ownership, and separate and distinct management and employees." (Mem. P. & A. Supp. Mot. Dismiss ["Mot. Dismiss"] at 5, ECF No. 31-1). Because E2 and Mikia are separate entities, neither E2 nor its counsel is empowered to argue in this Court on Mikia's behalf. Moreover, Blackstone is no longer contesting the dismissal of this action as it pertains to E2. Accordingly, the Court declines to consider the arguments contained in E2's Opposition and will consider Blackstone's Motion unopposed.

Procedure 59(e) (ECF No. 51). In it, Blackstone withdrew its Motion to Reconsider as to E2, but renewed its request for the Court to reconsider its dismissal of Mikia.

## II. DISCUSSION

### A. Standard of Review

The Federal Rules of Civil Procedure include three Rules that permit a party to move for reconsideration. Rule 54(b) governs motions to reconsider interlocutory orders. See Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1469–70 (4th Cir. 1991) (finding district court properly reconsidered interlocutory order under Rule 54(b)). This Rule provides that interlocutory orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed.R.Civ.P. 54(b). Rules 59(e) and 60(b) govern motions to reconsider final judgments. See Fayetteville Invs., 936 F.2d at 1469. Rule 59(e) controls when a party files a motion to alter or amend within twenty-eight days of the final judgment. Bolden v. McCabe, Weisberg & Conway, LLC, No. DKC-13-1265, 2014 WL 994066, at *1 n.1 (D.Md. Mar. 13, 2014). If a party files the motion later, Rule 60(b) controls. Id.

In this case, the Court entered its Order on March 30, 2020. Blackstone filed its Motion twenty-five days later, on April 24, 2020. Accordingly, Rule 59(e) controls.

A district court may only alter or amend a final judgment under Rule 59(e) in three circumstances: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." U.S. ex rel. Carter v. Halliburton Co., 866 F.3d 199, 210 (4th Cir. 2017) (citing Zinkand v. Brown, 478 F.3d 634, 637 (4th Cir. 2007)). A Rule 59(e)

4

amendment is "an extraordinary remedy which should be used sparingly." Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998) (quoting Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2810.1, at 124 (2d ed. 1995)). Furthermore, "[a] motion for reconsideration is 'not the proper place to relitigate a case after the court has ruled against a party, as mere disagreement with a court's rulings will not support granting such a request.'" Lynn v. Monarch Recovery Mgmt., Inc., 953 F.Supp.2d 612, 620 (D.Md. 2013) (quoting Sanders v. Prince George's Pub. Sch. Sys., No. RWT-08-501, 2011 WL 4443441, at *1 (D.Md. Sept. 21, 2011)).

**B.**     **Failure to Serve**

Blackstone argues that the Court "erred by dismissing Mikia from this action because Blackstone has acted diligently to effectuate international service on Mikia within a reasonable period of time consistent with the Federal Rules of Civil Procedure." (Mem. P. & A. Supp. Mot. Amend or Alter J. Pursuant to Fed.R.Civ.P. 59(e) ["Mot. Reconsider"] at 8, ECF No. 42-1).[3] Service of process on a foreign defendant is governed by Rule 4(f), which provides that an individual may be served in a place not within any judicial district of the United States "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed.R.Civ.P. 4(f)(1).

Because both the United States and China are signatories to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (the "Hague Convention"),

---

[3] Citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

5

the Hague Convention governs service on Mikia. The Hague Convention allows for "several alternate methods of service: (1) service through the Central Authority of member states; (2) service through consular channels; (3) service by mail if the receiving state does not object; and (4) service pursuant to the internal laws of the state." Burda Media, Inc. v. Viertel, 417 F.3d 292, 300 (2d Cir. 2005) (citation omitted).

Although the Court of Appeals for the Fourth Circuit has not imposed a time limit on foreign service of process, several courts have held that a plaintiff must act diligently and effectuate international service within a reasonable period of time. See USHA (India), Ltd. v. Honeywell Int'l, Inc., 421 F.3d 129, 134 (2d Cir. 2005) (concluding that Rule 4(m)'s exemption "does not apply if, as here, the plaintiff did not attempt to serve the defendant in the foreign county"); see also Nylok Corp. v. Fastener World Inc., 396 F.3d 805, 807 (7th Cir. 2005) (stating that "the amount of time allowed for foreign service is not unlimited" and suggesting that dismissal may be appropriate "[i]f, for example, a plaintiff made no attempt to begin the process of foreign service within 120 days") (internal quotation marks and citations omitted).

Here, Blackstone filed its original Complaint on January 25, 2019, naming both Mikia and E2 as Defendants. (ECF No. 1). The same day, the Clerk of the Court issued Blackstone summonses for both Defendants. (ECF No. 5). On February 14, 2019, Blackstone filed an Affidavit of Service, asserting that it personally served E2 on January 31, 2019. (ECF No. 15). On April 9, 2019, the Clerk reissued a summons for Mikia. (ECF No. 28). However, Blackstone never filed an Affidavit of Service as to Mikia, and there are no docket entries regarding any attempts by Blackstone to serve Mikia.

While Blackstone failed to keep the Court apprised of its efforts to serve Mikia, it demonstrates in its Motion to Reconsider that this failure was not for lack of such efforts. In China, service generally proceeds through a "central authority—the Ministry of Justice—that arranges for service according to domestic law." NOCO Co. v. Liu Chang, No. 1:18-CV-2561, 2019 WL 2135665, at *2 (N.D.Ohio May 16, 2019). Blackstone asserts that its process server, APS, "submitted a copy of the Complaint with translations in Simplified Chinese to the Chinese Ministry of Justice for service on Mikia" on February 28, 2019, approximately one month after summonses were issued. (Mot. Reconsider at 20). Blackstone also "emailed copies of the Complaint and Summons in both English and Simplified Chinese on February 1, 2019 to Mr. Yong Zhang, President and CEO of Mikia, and Mr. Jiaping Wu, Marketing Manager of Mikia, who had sent the notice of termination at issue to Blackstone." (Id.). Blackstone once again engaged APS to serve Mikia through the Chinese Ministry of Justice in May 2019, roughly five weeks after the Court issued summonses for Blackstone's Amended Complaint. (Id.).

Blackstone's service efforts were unsuccessful. According to Blackstone, it requested updates on service of the Complaint from the Chinese Ministry of Justice once every month between July 2019 and October 2019. (Id.). The Ministry did not respond. (Id. at 20–21). Blackstone notes, however, that such a long service period is not unusual in Hague Convention cases. (Id. at 21 (citing cases)). Blackstone avers that on March 10, 2020, it received an affidavit from APS regarding its failure to successfully procure proof of service from the Chinese Ministry of Justice, and that it "was planning on providing APS's final report regarding the status of service to the Court at the time that it received

7

the Court's Order dismissing Mikia without prejudice." (Id. at 10). Accordingly, Blackstone argues, it acted diligently to serve Mikia as required under the Federal Rules of Civil Procedure. (Id. at 22).

The Court agrees. Moreover, the Court finds that it was "clear error" for it to dismiss Mikia sua sponte without first ascertaining the extent of Blackstone's efforts to serve Mikia. See, e.g., Nuance Commc'ns., Inc. v. Abbyy Software House, 626 F.3d 1222, 1241 (Fed. Cir. 2010) ("Dismissal of Abbyy Software was particularly problematic because the district court denied Nuance any opportunity to show that its service was proper."); Sanders v. Sw. Bell Tel., L.P., 544 F.3d 1101, 1111 (10th Cir. 2008) ("Here, the district court sua sponte dismissed SBC for insufficient service of process and was therefore required to give prior notice to the plaintiff under Rule 4(m).").[4]

Because the Court finds that clear error existed, Blackstone need not demonstrate that manifest injustice would result from the Court's previous ruling. The Court is nevertheless persuaded that manifest injustice would result if it declined to reconsider its dismissal of Blackstone's action against Mikia. As Blackstone argues, even though the Court dismissed its action against Mikia without prejudice, if the Court declines to reinstate Mikia in the present action, Blackstone would be "forced to re-start the entire case and to again engage in the cumbersome and time consuming process of serving Mikia via the Hague Convention." (Mot. Reconsider at 23). Blackstone further notes that this process

---

[4] While the present case is distinct from Sanders in that Rule 4(m) contains an express notice requirement, the purpose behind that requirement—providing a plaintiff the ability to instruct the court as to the status of its service efforts before dismissing its lawsuit—applies equally to service under Rule 4(f).

will "delay this case another year at the least and will require costly new attempts at notifying Mikia through international means in China"—attempts made even more difficult and costly because of the limitations placed on travel in response to the novel coronavirus. (Reply Supp. Mot. Amend or Alter J. Pursuant to Fed.R.Civ.P. 59(e) ["Reply"] at 19–20, ECF No. 49). "It is a time-honored statement that 'justice delayed is justice denied[.]'" In re PSLJ, Inc., 904 F.2d 701, 1990 WL 76571, at *1 (4th Cir. 1990). It would be unjust to unnecessarily delay these proceedings further. Accordingly, the Court will grant Blackstone's Motion as it pertains to Mikia.

In order to understand the status of Blackstone's service efforts to date, the Court will re-open this case and direct Blackstone to file a status report following this Order cataloging its efforts to serve Mikia and any contact it or its counsel has had with Mikia or its directors, executives, agents, or employees since the beginning of this litigation. Blackstone should further notify the Court whether it intends to seek a Clerk's Entry of Default against Mikia on the basis of its service efforts to date.

### III.   CONCLUSION

For the reasons stated above, the Court will grant Blackstone's Motion to Reconsider and vacate the March 30, 2020 Order to the extent it dismissed Mikia from this action. A separate Order follows.

Entered this 12th day of January, 2021.

                                                     /s/
                                    George L. Russell, III
                                    United States District Judge